## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **AHARON Y. ROSSKAMM, et al.,** | **Case No. 1:22-CV-01445** |
| **Plaintiffs,** | |
| -vs- | |
| | **JUDGE PAMELA A. BARKER** |
| **AMAZON.COM, INC.,** | **MEMORANDUM OPINION AND ORDER** |
| **Defendant.** | |

Currently pending is Defendant Amazon.com, Inc.'s ("Defendant") Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) filed on August 19, 2022 ("Defendant's Motion").  (Doc. No. 6.) *Pro se* Plaintiffs Aharon Yechiel Rosskamm and Shirah Lena Rosskamm ("Plaintiffs") responded to Defendant's Motion on October 3, 2022 ("Plaintiffs' Response") (Doc. No. 8), to which Defendant replied on October 10, 2022 ("Defendant's Reply") (Doc. No. 10).

For the following reasons, Defendant's Motion is hereby GRANTED.

## I.    Factual Background

Defendant operates an online store, Amazon.com, that offers customers a wide variety of products for sale.  (Doc. No. 6-2, ¶ 5.)  Defendant is a resident and has its principal place of business in Seattle, King County, Washington.  (*Id.* at ¶ 2.)  According to Defendant, in order to shop in its online store, consumers must create a customer account.  (*Id.* at ¶ 5.)  In creating a customer account, each consumer must agree to the Amazon Conditions of Use ("COUs"), which are linked in blue text in the "Create account" window, and read: "By creating an account, you agree to Amazon's Conditions of Use and Privacy Notice."  (*Id.*)  When customers sign-in to their Amazon customer accounts, they must re-accept the COUs on the "Sign-In" window, which read: "By continuing, you

agree to Amazon's Conditions of Use and Privacy Notice." (*Id.* at ¶ 6.) When placing an order, customers must accept the COUs, which again are linked below the "Place your order" button, and read: "By placing your order, you agree to Amazon's privacy notice and conditions of use." (*Id.* at ¶ 7.)

According to Defendant, Plaintiff Aharon Rosskamm created his Amazon customer account on April 5, 2013, and as of August 11, 2022, he had used his customer account to place 1,810 orders. (*Id.* at ¶ 9.) Plaintiff Shirah Rosskamm created her Amazon customer account on November 23, 2021, and as of August 11, 2022, she had used her account to place 203 orders. (*Id.*)

Plaintiffs are residents of Cuyahoga County, Ohio. (Doc. No. 1-1, ¶ 1.) Plaintiffs allege that on November 29, 2021, and November 30, 2021, Defendant stole $4,553.77 from them when Defendant charged Plaintiff Aharon Rosskamm's credit card that was saved on his Amazon account but had not been authorized to be used for those particular purchases. (*Id.* at ¶ 4.) Plaintiffs also allege that on January 16, 2022, and January 18, 2022, Defendant stole $2,948.73 from them when Defendant charged Aharon Rosskamm's credit card that was not associated with his Amazon account, or ever given to Defendant. (*Id.* at ¶ 7.) Plaintiffs further allege that on December 22, 2021, Defendant stole $748.00 from Plaintiff Shriah Rosskamm when Defendant changed the charges for a purchase from Shirah's Amazon card to Aharon's American Express card. (*Id.* at ¶ 9.) Plaintiffs allege charging credit cards associated with a customer account, "but not authorized by the card holder," is illegal and "blatantly violates their card holder agreements." (*Id.* at ¶ 12.) Plaintiffs allege that they informed Defendant that they did not authorize this practice after the incidents in November 2021, but Defendant proceeded to use a credit card not associated with Plaintiff Aharon Rosskamm's account in charges for purchases made in January 2022. (*Id.* at ¶ 7.)

2

After the January 2022 charges, Defendant "locked [Plaintiff Aahron Rosskamm] out of [his] account."  (*Id.* at ¶ 8.) Plaintiffs' business involved buying items on the Amazon website using a specific credit card that gave 5% cash-back on Amazon purchases, selling those items at cost-price, thereby leaving Plaintiffs with 5% profit.  (*Id.* at ¶ 5.)   Plaintiffs allege that Defendant "closed down [their] account," disabled [their] business," "locked up usage of [their] other [credit] cards," and as a result, Plaintiffs have experienced "tremendous credit score loss, and thereby loss of [the] ability to procure loans, leases, and credit cards."  (*Id.* at ¶ 16.)

Attached to Defendant's Motion is a true and correct copy of the COUs applicable on the dates of the transactions at issue—specifically, the COUs in place on November 29, 2021, November 30, 2021, December 22, 2021, January 16, 2022, and January 18, 2022.  (Doc. No. 6-2 at Ex. A; *see also* Doc. No. 11.)  In relevant part, the COUs read:

> Welcome to Amazon.com. Amazon.com Services LLC and/or its affiliates ("Amazon") provide website features and other products and services to you when you visit or shop at Amazon.com, use Amazon products or services, use Amazon applications for mobile, or use software provided by Amazon in connection with any of the foregoing (collectively, "Amazon Services").  By using the Amazon Services, you agree, on behalf of yourself and all members of your household and others who use any Service under your account, to the following conditions.
>
> . . .
>
> **DISPUTES**
> Any dispute or claim relating in any way to your use of any Amazon Service will be adjudicated in the state or Federal courts in King County, Washington, and you consent to exclusive jurisdiction and venue in these courts. We each waive any right to a jury trial.
>
> **APPLICABLE LAW**
> By using any Amazon Service, you agree that applicable federal law, and the laws of the state of Washington, without regard to principles of conflict of laws, will govern these Conditions of Use and any dispute of any sort that might arise between you and Amazon.

(Doc. No. 6-2 at PageID # 48, 51.)

## II.   Procedural History

On July 13, 2022, *pro se* Plaintiffs filed a Complaint against Defendant in the Cuyahoga County Court of Common Pleas.  (Doc. No. 1-1.)  In their Complaint, Plaintiffs allege that Defendant fraudulently charged their credit cards on multiple occasions and subsequently closed their Amazon accounts, which disabled their business and hurt their credit scores.  (*Id.* at ¶¶ 4, 7, 9, 16.)  Plaintiffs seek compensatory and punitive damages in the amount of $20,000,000.00, plus attorney fees and costs.  (*Id.* at 5.)

On August 12, 2022, Defendant filed a Notice of Removal in this Court based on the Court's original jurisdiction over this matter under 28 U.S.C. § 1332.  (Doc. No. 1.)  Plaintiffs did not seek remand.  Then, on August 19, 2022, Defendant filed the instant Motion seeking an order from this Court transferring this case to the Seattle Division of the United States District Court for the Western District of Washington under 28 U.S.C. § 1404(a).  (Doc. No. 6.)  Plaintiffs initially did not oppose Defendant's Motion.

On September 20, 2022, the Court issued an Order to Show Cause requiring both parties to submit evidentiary material explaining why more than $75,000, exclusive of interest and costs, was in controversy to establish diversity jurisdiction under 28 U.S.C. § 1332.  (Doc. No. 7.)  While on the face of the Complaint Plaintiffs sought compensatory and punitive damages in the amount of $20,000,000 (Doc. No. 1-1 at 5), it was not clear to the Court that Plaintiffs had alleged any more than $8,250.50 in damages (Doc. No. 7).  On October 3, 2022, Plaintiffs filed a Response to the Court's Order to Show Cause (Doc No. 8), and on October 4, 2022, Defendant filed its Response to

the Court's Order to Show Cause (Doc. No. 9).  The Court determined sufficient cause shown as to the amount in controversy at that time.  (Oct. 18, 2022 non-doc. Order.)

In Plaintiffs' Response to the Court's Order to Show Cause, Plaintiffs also included arguments opposing Defendant's Motion to Transfer Venue.[1]  (Doc. No. 8 at 3-5.)  Defendant filed a Reply in Support of its Motion on October 10, 2022.  (Doc. No. 10.)

On October 11, 2022, the Court issued an Order requiring Defendant to identify the dates applicable to the COUs attached to Defendant's Motion.  (Oct. 11, 2022 non-doc. Order.)  On October 18, 2022, Defendant supplemented its Motion in response to the Court's October 11, 2022 Order. (Doc. No. 11.)  Accordingly, Defendant's Motion is now ripe for review.

## III.    Legal Standard

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  In its analysis, "the district court must first establish an adequate alternative forum."  *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009); *see also Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007).  "An alternative forum is adequate when the defendant is amenable to process and the alleged harm can be remedied."  *Lu v. SAP Am., Inc.*, 2022 WL 13983546, at *7 (6th Cir. Oct. 24, 2022); *see also Schoenfeld v. Mercedes-Benz USA, LLC*, 2021 WL 3579016, at *2 (S.D. Ohio Aug. 13, 2021) ("An action 'might have been brought' in a transferee

---

[1] In their Response, Plaintiffs use first-person singular language, seemingly referring only to Plaintiff Aaron Rosskamm. (*See* Doc. No. 8.)  However, because this filing is signed by both Plaintiff Aaron Rosskamm and Plaintiff Shirah Rosskamm, the Court will treat Plaintiffs' Response as being filed on behalf of both Plaintiffs.

court if the court has jurisdiction over the subject matter of the action, venue is proper there and the defendant is amenable to process issuing out of the transferee court.").

Then, according to the Sixth Circuit:

[W]hen assessing a forum-non-conveniens motion relying on a forum-selection clause, we first ask several contract-specific questions, including whether the forum-selection clause is applicable, mandatory, valid, and enforceable. An answer of "yes" to all those questions means *Atlantic Marine*'s modified forum-non-conveniens analysis applies and the plaintiff bears the burden of showing that the public factors weigh heavily against dismissal; an answer of "no" to any of them means the traditional forum-non-conveniens analysis applies instead.

*Lakeside Surfaces, Inc. v. Cambria Co.*, 16 F.4th 209, 216 (6th Cir. 2021).

Under *Atlantic Marine*, when a valid and enforceable forum-selection clause exists, "the plaintiff's choice of forum 'merits no weight' and courts consider arguments only under the public-interest factors, treating the private-interest factors as 'weigh[ing] entirely in favor of the preselected forum.'" *Id.* (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63-64 (2013)). The plaintiff "bear[s] the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 67. Because the public-interest factors "will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64. Under this analysis, "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* at 59-60 (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)).

Forum-selection clauses are interpreted according to federal common law rules of contract interpretation. *Wong*, 589 F.3d at 826; *accord. CBS Boring & Machine Co., Inc. v. Eisenwerk Brühl GmbH*, 2019 WL 1455161, at *2 (E.D. Mich. Apr. 2, 2019). Federal common law interprets forum-

selection clauses with ordinary contract principles. *In re Delta America Re Ins. Co.*, 900 F.2d 890, 892 (6th Cir. 1990).

## IV.    Analysis

Defendant requests that the Court transfer this case to the Seattle Division of the United States District Court for the Western District of Washington. (Doc. No. 6.) Defendant argues that Plaintiffs' dispute arises from and relates to their use of Defendant's services, and thus, the agreed-upon COUs' exclusive forum-selection clause requires this case be adjudicated in federal court in King County, Washington. (*Id.* at 1-5.) Defendant further argues that under 28 U.S.C. § 1404(a), as modified by *Atlantic Marine*, the public interest factors do not weigh against transferring the case. (*Id.* at 7-8.) Accordingly, Defendant argues the COUs mandate that the only proper venue of this dispute is in Washington, not in this Court. (*Id.* at 1.)

In their Opposition, Plaintiffs seek to incorporate the arguments they initially made in their Complaint. (Doc. No. 8 at 3.) In their Complaint, Plaintiffs argue that the COUs' forum-selection clause is unconscionable: "It makes absolutely no sense to even suggest that anyone from anywhere in the country or world, would have to fly out to a specific county in Washington State to handle every step of litigation, to be able to claim even a single dollar. This is something no one would ever agree to." (Doc. No. 1-1, ¶ 15.) In their Opposition, Plaintiffs argue that they never consented to the COUs. (Doc. No. 8 at 3-4.) Plaintiffs argue that the COUs are hidden behind a link that the customer does not have to click on to create an Amazon account, sign-in to an Amazon account, or place an order on Amazon's website. (*Id.* at 3.) Plaintiffs further argue that the COUs are constantly changing, and Defendant has not offered any "proof that [they] checked the Conditions of Use, or that the Conditions of Use even [had] these conditions at the time when [they] created [their] account[s]."

(*Id.* at 4.)  Plaintiffs further argue that these COUs do not apply to purchases made on Plaintiff Shirah Rosskamm's account that were subsequently charged by Defendant to Plaintiff Aharon Rosskamm's credit card, as Aharon Rosskamm cannot be bound by COUs that applied to someone else's purchase. (*Id.* at 4-5.)  Lastly, Plaintiffs argue that it is in the public's interest to have this case heard in Ohio. (*Id.* at 5.)

In its Reply, Defendant argues the Court should disregard or strike Plaintiffs' arguments opposing Defendant's Motion in Plaintiff's Response, as Plaintiffs failed to file an opposition within the time required by Local Rule 7.1(d).  (Doc. No. 10 at 2.)  Defendant further argues that Plaintiffs' Response "is wholly insufficient to carry Plaintiffs' 'heavy burden' in resisting the parties' binding forum selection clause."  (*Id.*)  Defendant argues that "[c]ourts have repeatedly rejected Plaintiffs' argument that these very COUs, emphasized with blue text immediately below buttons to create an account, sign in, or place orders, are not sufficiently conspicuous or accessible." (*Id.* at 4.)  Defendant also argues that modification of Defendant's COUs does not make the COUs invalid, Plaintiffs' current choice of forum bears no weight in the Court's consideration of the forum-selection clause, and both Plaintiffs assented to the COUs when they signed up, logged in, and placed orders on Defendant's website.  (*Id.* at 5-7.)

As an initial matter, the Court denies Defendant's request to disregard or strike Plaintiffs' Response.  (*See* Doc. No. 10 at 2.)  Given that a 28-day extension would have made Plaintiff's Response timely, and considering Plaintiffs' *pro se* status, the Court will excuse the tardiness of Plaintiffs' Response in this instance. *See Union Cent. Life Ins. Co. v. Anchor Fin. Servs.*, 2010 WL 4642896, at *3 (S.D. Ohio Oct. 6, 2010).

### A.      Whether the Alternative Forum Is Adequate

The Court determines that the Western District of Washington is an adequate alternative forum in which this case "might have been brought."  *See* 28 U.S.C. § 1404(a).  The Western District of Washington retains diversity jurisdiction over this case, and venue is proper under 28 U.S.C. § 1391, as Defendant is a resident of and has its principal place of business in Seattle, King County, Washington.  (Doc. No. 6-2, ¶ 2.)  Further, Defendant, by bringing the instant motion, appears to concede that it would be subject to process issuing out of the court in Washington.  *See Honeycutt v. Thor Motor Coach, Inc.*, 2022 WL 2986877, at *3 (S.D. Ohio July 28, 2022).  Thus, Defendant's Motion satisfies the threshold inquiry under § 1404(a) because this action "might have been brought" in the Western District of Washington.  *See Wong*, 589 F.3d at 830.

### B.      Whether the Forum-Selection Clause Is Applicable to the Claims at Issue, Mandatory, Valid, and Enforceable

The Court must next determine if the COUs' forum-selection clause "is applicable to the claims at issue, mandatory, valid, and enforceable."  *Honeycutt*, 2022 WL 2986877, at *2 (S.D. Ohio July 28, 2022) (quoting *Lakeside Surfaces*, 16 F.4th at 215).  The parties specifically dispute whether the forum-selection clause is applicable to the claims at issue and whether the forum-selection clause is valid and enforceable.  The Court will address each issue in turn.

As to applicability, Plaintiffs argue that "part of this case does not result from [their] Amazon account[s], and in no way can it be connected to any Conditions of Use that [they] may or may not have agreed to."  (Doc. No. 8 at 4.)  Plaintiffs allege a purchase made on Plaintiff Shirah Rosskamm's account was charged to a credit card in Plaintiff Aharon Rosskamm's name.  (*Id.*)  Thus, Plaintiffs argue, no COUs that Plaintiff Shirah Rosskamm could have agreed to would cover charges to someone else's credit card, and vice versa, no COUs that Plaintiff Aharon Rosskamm could have

agreed to would cover charges made to his credit card via a purchase from someone else's account. (*Id.*)  While Plaintiffs recognize that the COUs include language that covers the user, as well as "all members of [their] household and others who use any Service under your account," and Plaintiffs admit they live in the same household, Plaintiffs argue Aharon Rosskamm has never used Shirah Rosskamm's Amazon account, and thus, cannot be bound by the COUs.  (*Id.* at 5.)

Defendant argues that all of Plaintiffs' allegations directly relate to each Plaintiffs' use of the Amazon.com website, "and thus fall within the broad scope of the forum selection clause, which encompasses 'any' disputes related to Plaintiffs' use of Amazon's services."  (Doc. No. 6 at 8.) Defendant argues that both Plaintiff Aharon Rosskamm and Plaintiff Shirah Rosskamm independently and repeatedly agreed to the COUs when signing up, logging in, and placing orders on Defendant's website.  (Doc. No. 10 at 7.)

The Court finds that the COUs at issue are applicable to all of Plaintiffs' claims, including their claim that Plaintiff Aharon Rosskamm was improperly charged by Defendant through Plaintiff Shirah Rosskamm's account.[2]  These claims all involve issues that fall within the broad scope of the forum-selection clause.  Plaintiffs' argument to the contrary misses the mark.  The forum-selection clause covers "[a]ny dispute or claim relating in any way to your use of any Amazon Service."  (Doc. No. 6-2 at PageID # 51.)  Plaintiffs claim that they made purchases on the Amazon website, and Amazon used alternate credit cards, including Plaintiff Aharon's credit card on an order made on Plaintiff Shirah's account, to complete the purchases, rather than the credit cards authorized by each

---

[2] "The Court may consider matters outside the pleadings when a party challenges venue or jurisdiction."  *Reagan v. Encompass Sols., Inc.*, 2020 WL 7352665, at *3, n.1 (N.D. Ohio Dec. 14, 2020); *see also Morgantown Machine & Hydraulics of Ohio, Inc. v. Am. Piping Prods., Inc.*, 2016 WL 705261, at *2 (N.D. Ohio Feb. 23, 2016) ("Where a party challenges either venue or jurisdiction, the court may consider matters outside the pleadings and 'is empowered to resolve factual disputes.'" (quoting *Tenn. Imp., Inc. v. Filippi*, 745 F. Supp. 1314, 1320 (M.D. Tenn. 1990))).

Plaintiff.  (Doc. No. 1-1, ¶¶ 4, 7, 9.)  Those claims, including the claim that Defendant improperly charged Aharon's credit card not previously used on Shirah's account, directly relate the use of both Plaintiffs' use of an Amazon Service.  The credit card used for a purchase on Shirah's account relates to her use of an Amazon Service and the credit card used for a purchase on Aharon's account relates to his use of an Amazon Service.  Thus, Plaintiffs' claims fall within the scope of the forum-selection clause.

The Court also finds, though not disputed by the parties, that the forum-selection clause is mandatory.  Because the forum-selection clause provides that any dispute or claim "*will* be adjudicated in the state or Federal courts in King County, Washington," and that "you consent to *exclusive* jurisdiction and venue in these courts" (Doc. No. 6-2 at PageID # 51 (emphasis added)), the forum-selection clause is mandatory, not permissive.  *See Advanced Critical Devices v. Boston Sci. Corp.*, 2022 WL 1266117, at *6 (N.D. Ohio Apr. 28, 2022) (holding the clauses "shall be construed" and "the parties agree to exclusive jurisdiction" as deeming the forum-selection clause to be mandatory, not permissive); *Braman v. Quizno's Franchise Co., LLC*, 2008 WL 611607, at *6 (N.D. Ohio Feb. 20, 2008) ("By virtue of the parties' use of the word 'exclusive,' the forum selection clause in this case is explicitly mandatory, not permissive.").

Next, to assess whether a forum-selection clause is valid and enforceable, the Court must consider whether: "(1) the clause was obtained by fraud, duress, or other unconscionable means; (2) the designated forum would ineffectively or unfairly handle the suit; (3) the designated forum would be so seriously inconvenient that requiring the plaintiff to bring suit there would be unjust; or (4) enforcing the forum selection clause would contravene a strong public policy of the forum state." *Lakeside Surfaces*, 16 F.4th at 219-220 (citing *Wong*, 589 F.3d at 828 and *Shell v. R.W. Struge, Ltd.*,

55 F.3d 1227, 1229-230 (6th Cir. 1995)). "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced." *Wong*, 589 F.3d at 828.

Plaintiffs' arguments in this regard can be construed as arguing that the COUs are invalid and unenforceable chiefly because they did not agree to them, and that having to litigate this case in Washington would be so seriously inconvenient that it would be unjust.[3] (Doc. No. 1-1, ¶¶ 8, 11, 15; Doc. No. 8 at 3-5.) The Court need not address the first, second, or fourth factors, as Plaintiffs do not dispute them.[4]

Specifically, Plaintiffs first argue that the COUs are not valid because Plaintiffs did not expressly consent to the COUs. (Doc. No. 8 at 3.) Plaintiffs argue that because a customer does not have to open or read the COUs, "click anything that acknowledges that one is aware of or read" the COUs, and because the COUs are not "put in a place that should garner the attention of someone opening the account, signing in, or placing an order," they did not accept the COUs. (*Id.* at 3-4.) Plaintiffs argue that because the COUs are "hidden behind a link," that is "small, [in] blue font, below, and further down on the page," a customer may never see the COUs. (*Id.*) Plaintiffs further argue that the COUs are constantly changing, and Defendant has offered no proof that the referenced COUs were in effect when Plaintiff Aharon Rosskamm created his account. (*Id.* at 4.)

---

[3] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be literally construed[.]'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

[4] Plaintiffs' arguments cannot be construed as arguing that the forum-selection clause was obtained through fraudulent or unconscionable means. A party opposing a forum-selection clause "must show fraud in the inclusion of the clause itself. 'General claims of fraud [] do not suffice to invalidate the forum selection clause.'" *Wong*, 589 F.3d at 828 (quoting *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 722 (6th Cir. 2006)). Here, Plaintiffs have not argued that the forum-selection clause itself was included under fraudulent or unconscionable means. A general claim of fraud is not enough.

Defendant argues that courts have repeatedly rejected Plaintiffs' argument that these exact COUs were not sufficiently conspicuous, visible, or accessible. (Doc. No. 10 at 3.) Defendant further argues that the changing nature of the COUs does not render them unenforceable, and other courts have concluded that the COUs' modification clause does not make the COUs invalid. (*Id.* at 5.)

The Court concludes that the COUs at issue here are sufficiently conspicuous and accessible, and thus deemed enforceable. Courts find "clickwrap" agreements (or as some courts more specifically refer to them as "sign-in-wrap" or "hybrid" agreements) enforceable "where the existence of the terms was reasonably communicated to the user." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, (2d Cir. 2017). Courts have repeatedly found COUs with comparable characteristics to the COUs at issue here to be enforceable. *See Doe v. Project Fair Bid Inc.*, 2011 WL 3516073, at *4 (W.D. Wash. Aug. 11, 2011) ("Plaintiff here was required to acknowledge that he 'read and understood' the TOS before he was permitted to enter the website. This kind of 'clickwrap' agreement has been upheld in several cases in this circuit and elsewhere."); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 840 (S.D.N.Y. 2012) (collecting cases, and holding that plaintiff "was informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences"); *Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (upholding agreement when plaintiff had to click a "Place Order" button with a sentence immediately above containing hyperlinked Terms and Conditions); *Kim v. Tinder, Inc.*, 2018 WL 6694923, at *2 (C.D. Cal. July 12, 2018) (upholding hybrid agreement when plaintiff clicked on a log-in button directly below a hyperlink to the terms of use); *Zamber v. Am. Airlines, Inc.*, 2020 WL 1445479, at *3 (S.D. Fla. Feb. 11, 2020) (noting that hybrid agreements are regularly upheld and holding agreement enforceable when hyperlink was located above a log-in button).

13

Indeed, courts have held that Defendant's specific website reasonably communicates the existence of the COUs to its users and are thus enforceable. *See McKee v. Audible, Inc.*, 2017 WL 4685039, at *11, n.7 (C.D. Cal. July 17, 2017) ("This disclosure appears directly below a section that allows shoppers to review their items and shipping selections. . . . [T]he checkout site does not bury the disclosures on a submerged screen, or obscure their view through pop ups."); *Fagerstrom v. Amazon.com, Inc.*, 141 F. Supp. 3d 1051, 1069 (S.D. Cal. 2015) (finding Amazon provided notice of its Conditions of Use by placing the terms in a hyperlink below a "Review your order" header) *aff'd sub nom. Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862 (9th Cir. 2017); *Payne v. Amazon.com, Inc.*, 2018 WL 4489275, at *5 (D.S.C. July 25, 2018) ("The Court agrees with these courts in concluding that a reasonably prudent offeree would know that he agreed to Amazon's Conditions of Use by clicking the 'Place your order' button when that button appeared directly next to or above a statement hyperlinking to conditions and the statement indicated the user agreed to those conditions by ordering.").

This Court follows suit. Here, the text notifying the customer of the COUs when creating an account reads: "By creating an account, you agree to Amazon's Conditions of Use and Privacy Notice." (Doc. No. 6-2, ¶ 5.) That text referencing the COUs is linked in blue directly below the "Continue" button on the "Create account" page. (*Id.*) The text referencing the COUs when a customer must "Sign-In" to their Amazon account reads: "By continuing, you agree to Amazon's Condition of Use and Privacy Notice." (*Id.* at ¶ 6.) Again, this text is linked in blue immediately below the "Continue" button. (*Id.*) Lastly, when placing an order, the text referencing the COUs reads: "By placing your order, you agree to Amazon's privacy notice and conditions of use." (*Id.* at ¶ 7.) This text is also linked in blue and appears directly beneath the "Place your order" button. (*Id.*)

Because Defendant's COUs are contained in language directly beneath the "Sign-in," "Continue," or "Place your order" buttons, in blue ink indicating a hyperlink, and not surrounded by other language or hidden in any way, the Court deems the COUs to be reasonably communicated to Plaintiffs, and thus enforceable.

Further, the Court finds Plaintiffs' argument that Defendant has not offered proof that the referenced COUs were in effect when Plaintiff Aharon Rosskamm created his account unavailing. The COUs relevant to this case are the COUs in place during the time of each of the alleged purchases and subsequent charges for such purchases, and Defendant confirmed as such in its Supplement to its Motion.  (*See* Doc. No. 11.)  Defendant produced the COUs Plaintiffs agreed to when placing each alleged purchase.  (Doc. No. 6-2 at Ex. A; Doc. No. 11.)  Thus, Defendant has met its burden in identifying the proper COUs.  *See Edmundson v. Amazon.com, Inc.*, 2020 WL 5819870, at *2 (N.D. Ill. Sept. 30, 2020).  Plaintiffs have failed to provide any further evidence or argument that because Defendant revises its COUs, the forum-selection clause Plaintiffs agreed to is unenforceable.  As such, the Court determines the forum-selection clause is enforceable here.

Plaintiffs next argue that it is unconscionable for the forum-selection clause to force Plaintiffs to litigate this lawsuit in Washington.  (Doc. No. 1-1, ¶ 15; Doc. No. 8 at 4 ("It makes no sense that anyone from anywhere in the country or world, would have to fly out to specific county in Washington State to handle every step of litigation, to be able to claim even a single dollar.")).  Defendant argues that under *Atlantic Marine*, "the plaintiff's choice of forum merits no weight." (Doc. No. 10 at 6 (quoting *Atl. Marine*, 571 U.S. at 63)).  Defendant further argues that "Plaintiffs have not identified any potential burden in pursuing their claims in the agreed-upon forum, other than merely insisting that it 'makes no sense.'"  (*Id.* (quoting Doc. No. 8 at 4).)

The Court finds Plaintiffs' argument meritless.  As explained by the Sixth Circuit, to meet the third prong, a "plaintiff must show that enforcement of the claims would be so inconvenient such that its enforcement would be unjust or unreasonable."  *Wong*, 589 F.3d at 829. "This finding must be based on more than mere inconvenience of the party seeking to avoid the clause."  *Id.*  The Sixth Circuit explained further that it had "previously held that enforcement of a forum selection clause would not be unreasonable where the opposing party failed to produce any evidence that it was exploited or unfairly treated."  *Id.*  The party seeking to avoid enforcement of a forum-selection clause bears a "heavy burden."  *Id.* at 830.

Considering the heavy burden that rests with Plaintiffs in seeking to avoid enforcement of the forum-selection clause, the Court finds that Plaintiffs have not demonstrated that litigating their dispute in Washington would be so inconvenient for them that it would be unjust to require them to bring suit there.  While it may be more convenient for Plaintiffs to litigate in Ohio, Plaintiffs entered into a contract that provided for exclusive jurisdiction in the courts of Washington.  Thus, Plaintiffs have failed to meet their heavy burden.  *See e.g.*, *Wong*, 589 F.3d at 829-830 ("In this case, plaintiffs are not sophisticated business entities with the ability to negotiate the forum, and continuing the suit in Gibraltar would no doubt be an inconvenience.  Yet even with these considerations, plaintiffs have not carried their 'heavy burden' of showing that enforcing this forum selection clause would be unjust or unreasonable.").

## C.    Whether Transfer Is Appropriate

Having found the forum-selection clause applicable, mandatory, valid, and enforceable, the Court now turns to whether transfer is appropriate under the analysis set forth in *Atlantic Marine*.

Plaintiffs argue that there is a public interest in having the case decided here in Ohio because Defendant's actions affect "the vast majority of Ohio residents," and "Ohio residents deeply desire an easier and more manageable way to stopping these types of actions, and do not want to have to travel to one county in Washington to have to file a suit over every dollar Amazon takes illegitimately." (Doc. No. 8 at 5.) Plaintiffs argue that in their "unofficial polling of Ohio residents," Ohio residents oppose Defendant "stealing from their credit cards." (*Id.*) Plaintiffs further argue that Defendant "has many fulfillment centers and establishments here in Ohio, and is definitely at home here in Ohio." (*Id.*)

In its Reply, Defendant argues that Plaintiffs have not met their "heavy burden" in resisting the forum-selection clause. (Doc. No. 10 at 6.) Rather, Defendant argues that Plaintiffs have only attempted to show that the public interest factors weigh in favor of hearing the case in Ohio with an "unofficial polling of Ohio residents," and the unsupported proposition that the majority of Ohio residents are Defendant's customers. (*Id.*) Defendant argues this is not enough.

The Court agrees with Defendant. Under the *Atlantic Marine* rubric, the Court gives no weight to plaintiff's choice of Ohio as the forum and will not consider any arguments regarding the personal inconvenience of litigating this case in Washington. *See Atl. Marine*, 571 U.S. at 63. Instead, the burden is on plaintiff to "show[ ] that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 67. "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

17

Plaintiffs have not shown that any public-interest factors "overwhelmingly disfavor a transfer." *See Atl. Marine*, 571 U.S. at 67.  In fact, Plaintiffs' only argument as to the public-interest factors is that the vast majority of Ohio residents are Defendant's customers.  (Doc. No. 8 at 5.)  Plaintiffs provide no evidence to support this argument.  Nor is this argument persuasive.  Rather, here, the public interest factors favor Washington as the appropriate forum. The public interest of "having the trial in a forum that is at home with the state law that must govern the case" favors Washington because the COUs contains a choice of law clause wherein the parties agreed Washington law would govern disputes.  *See Braman v. Quizno's Franchise Co., LLC*, 2008 WL 611607, at *6 (N.D. Ohio Feb. 20, 2008).  Additionally, the public interest favors transfer because "the public has a strong interest in applying contracts as they are written." *AdvancedEPM Consulting, Inc. v. Peloton Grp., LLC*, 2017 WL 36268, at *4 (N.D. Ohio Jan. 4, 2017) (quoting *PolyOne Corp. v. Teknor Apex Co.*, No. 1:14CV0078, 2014 WL 4207671, at *6 (N.D. Ohio Aug. 25, 2014)).  Plaintiffs contracted to litigate disputes in Washington and "courts should not unnecessarily disrupt the parties' settled expectations." *Atl. Marine*, 571 U.S. at 66.  Rather, "'the interest of justice' is served by holding parties to their bargain." *Id.*

Further, Plaintiffs have not met their burden of articulating why this is an exceptional case where a valid forum-selection clause should not be enforced.  *See Atl. Marine*, 571 U.S. 49, 59-60 ("[A] proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." (citation omitted)).  Accordingly, the Court must transfer the case to the Seattle Division of the United States District Court for the Western District of Washington in accordance with the forum-selection clause.

CCC

## V.    Conclusion

For the foregoing reasons, Defendant's Motion to Transfer Venue (Doc. No. 6) is hereby

GRANTED.  The Court ORDERS this case transferred, pursuant to 28 U.S.C. § 1404(a), to the Seattle

Division of the United States District Court for the Western District of Washington.

**IT IS SO ORDERED.**


                                                        *s/Pamela A. Barker*
                                                        PAMELA A. BARKER
Date: October 27, 2022                                  U. S. DISTRICT JUDGE

19